IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| STEVE MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:22-cv-483-JTA |
| | ) |
| TK ELEVATOR CORPORATION, | ) |
| formerly known as | ) |
| Thyssenkrupp Elevator Corporation, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Before the Court are Defendant TK Elevator's Motion for Summary Judgment (Doc. No. 22) and Defendant TK Elevator's Motion to Exclude John Koshak's Expert Report and Opinions (Doc. No. 23). For the reasons stated below, on October 5, 2023, the Court entered an Order GRANTING IN PART AND DENYING IN PART Defendant TK Elevator's Motion for Summary Judgment and DENYING without prejudice Defendant TK Elevator's Motion to Exclude John Koshak's Expert Report and Opinions. (Doc. No. 42.) This Memorandum Opinion explains the basis of that ruling.

### I.   JURISDICTION

This Court has subject matter jurisdiction over Plaintiff's claims based on diversity of citizenship under 28 U.S.C. § 1332. The parties are completely diverse and the amount in controversy exceeds $75,000.00. Venue and personal jurisdiction appear proper and are not contested. The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.     FACTS[1]

During the 2018 construction of the Lee County Courthouse Annex, Defendant installed two new elevators in the Annex, including Elevator E1, the elevator at issue in this case. The regulatory code applicable to Elevator E1 requires that the elevator and its component parts undergo maintenance at intervals frequent enough to minimize any noncompliant condition, and the maintenance frequency is determined by various factors such as the elevator's age, usage, condition, and environment. (Doc. No. 22-2 at 5-6; Doc. No. 22-3 at 3.) In January 2020, the Lee County Commission entered a service contract for Defendant to provide regular elevator maintenance four times per year. (Doc. No. 22-3 at 12.) Among the specific maintenance tasks the service contract required Defendant to provide were the following:

> [Defendant] will perform the following services:
>
> - Examine your elevator equipment for optimum operation. Upon examination, lubrication **and adjustment** will cover the following components of your elevator system:
>
>   - Control and landing positioning system
>   - Signal fixtures
>   - Machines, drives, motors, governors, sheaves, and wire ropes
>   - Power units, pumps, valves, and jacks
>   - **Car hoistway door operating devices and door protection equipment**
>   - Loadweighers, car frames and platforms, and counterweights
>   - Safety mechanisms
>
> - Lubricate equipment for smooth and efficient performance

---

[1] Where evidence conflicts, the facts are set forth here in the light most favorable to the nonmoving party. *Sears v. Roberts*, 922 F.3d 1199, 1209 (11th Cir. 2019).

2

- **Adjust elevator parts and components to maximize performance and safe operation.**

(Doc. No. 22-3 at 3 (emphasis added).)

It is undisputed that Defendant's personnel conducted maintenance on Elevator E1 in January, March, and August 2020, and in January and April 2021. (Doc. No. 2-1 at 9-10).

Elevator E1 has two doors: a cab or car door, which is the internal door to the elevator cab itself, and the hoistway door, which is the external door. (Doc. No. 22-2 at 14.) When the internal cab door opens horizontally, a clutch mounted on the cab door engages the pickup roller assembly on the hoistway door so that the hoistway door opens with the cab door. (Doc. No. 28-1 at 10.) When the elevator doors are fully closed, however, there must be a 0.25 inch running clearance between the cab door's clutch assembly and the hoistway door's pickup roller assembly so that the clutch will not collide or engage with the pickup roller assembly when the elevator moves vertically. (*Id.*) If the clutch assembly impacts the pickup roller assembly during the elevator's vertical travel, it will trigger an interlock system, bringing the elevator to an emergency stop. (*Id.*)

On July 14, 2021, Plaintiff Steve Miller, a Lee County Sheriff's Deputy who worked at the Lee County Courthouse, rode the courthouse elevator from the first floor of the Lee County Courthouse Annex to the second floor and delivered some mail. (Doc. No. 23-1 at 5, 13.) He then boarded Elevator E1 on the second floor and pushed the button to go down to the first floor. (Doc. No. 23-1 at 13-14.) The elevator doors shut, the lights flickered, and the elevator rumbled and shook slightly. (*Id.* at 14.) Though his feet did not leave the

ground, he felt as if his stomach "came up into [his] chest," there was "kind of like this horrendous stop," he was "jolted down," and he fell forward on his hands and knees. (*Id*.) He was trapped in the elevator, and he felt burning in his back and down his left leg and numbness in his lower back. (*Id*. at 14-15.) He was in "a lot of pain" and could not stand up. (*Id*.) He called for help and received assistance getting out of the elevator, which had stopped with the cab floor approximately 18-22 inches above the first floor of the building. (*Id*. at 16.) His back was injured and required medical treatment. (*Id*.)

It is undisputed that the elevator's sudden stop was an emergency stop triggered as follows: a rubber bumper became dislodged from its usual place and stuck to the cab door, causing the cab door clutch assembly to strike the pickup roller assembly on the first floor hoistway door, which triggered the interlock and the sudden emergency stop that jolted Plaintiff onto the floor, causing his injuries.

After the incident, John Davis, who works for Defendant servicing and maintaining elevators, checked the elevator, removed the bumper, and returned the elevator to service. In the process of checking the elevator, he stood on top of the elevator and "eyeball[ed]" the clearance between the pickup roller and the clutch and determined that the clearance was 0.25 inches, plus or minus one sixteenth of an inch (which he testified would meet the clearance requirements). (Doc. No. 22-2 at 23-24.) A state elevator inspector, Anthony Barry, also inspected the elevator immediately after the incident. (Doc. No. 22-5 at 18.) Regarding this inspection, he testified as follows:

Q: All right. Did you ever get up on top of the elevator and look down at the

4

>BARRY: Oh, yeah. Oh, yeah. Yes.
>
>Q – the – to see the figure four clearances?
>
>BARRY: Yeah.· That was part of the – part of the determination – like I said, because we could see from the rollers and, like I say, the clearance that I had, once being able to run the car, that it wouldn't have – it didn't have enough clearance to – and that's why it hit the roller.

(*Id*.)

John Koshak, Plaintiff's elevator installation, maintenance, and repair expert, opined that the rubber bumper was not thick enough to have caused the interlock to be clipped if the proper running clearance had been maintained at the first-floor level. (Doc. No. 28-1 at 14.) One independent basis for this opinion was the fact that the elevator did not clip the interlock at the second floor, which Koshak cited as "evidence that the pick-up roller to clutch clearance was adequate to allow the interlock to close at the second floor, even with the bumper attached to the car door." (*Id*. at 15.) Koshak further opined that "this is also evidence that the clearance between the first floor pick-up roller and clutch was less than the clearance between the second floor pick-up roller and clutch and is evidence the first floor pick-up roller alignment was incorrect due to misadjustment." (*Id*.) Koshak explained: "Had the second floor pick-up roller alignment been the same relative position as the first floor alignment, the car would not have left the second floor." (*Id*.) Elsewhere in his initial report, Koshak stated:

>While the bumper may have adhered to the car door, there should have been enough pick-up to clutch clearance to not have caused a sudden stop. There was adequate clearance on the second floor that the interlock was able to close and depart, but inadequate clearance at the first floor. This is evidence showing that the pick up clearance on the first floor was not adjusted correctly.

(*Id*. at 14.)

In a later rebuttal report, Koshak opined that the protruding part of the bumper was "0.166 inch,[2] less than the correct running clearance of 0.25 inch. So even with the bumper stuck to the car door, the protruding portion of the rubber bumper should not have" clipped the interlock and triggered an emergency stop if the proper clearance had been maintained. (Doc. No. 23-7 at 3.) Koshak arrived at this measurement by counting the pixels in a digital picture of the bumper and calibrating his calculation based on the bumper's known width of 0.75 inches. (*Id*.)

### III.   PROCEDURAL HISTORY

On July 12, 2022, Plaintiff filed a Complaint against Defendant in the Circuit Court of Lee County, Alabama. (Doc. No. 1-1.) He alleged claims of negligent/wanton elevator installation, negligent/wanton elevator maintenance, negligent/wanton elevator inspection, and violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").

On August 12, 2022, Defendant removed the case to this Court and filed an Answer. (Docs. No. 1, 2.)

On August 18, 2023, Defendant filed its Motion for Summary Judgment and its Motion to Exclude John Koshak's Expert Report and Opinions. (Docs. No. 22, 23.) Both motions have been fully briefed and are ripe for disposition.

---

[2] As discussed below, Defendant seeks to exclude Koshak's 0.166 inch measurement.

## IV.     STANDARD OF REVIEW

A.     Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Palm v. U.S.*, 904 F. Supp. 1312, 1314 (M.D. Ala. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324. A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the

7

material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e). As stated by the Court in *Celotex*, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

B.   Motion to Exclude Koshak's Expert Testimony

Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that, on summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Though Defendant did not limit its motion to exclude Koshak's testimony solely at the summary judgment stage, evidence considered on summary judgment must be capable of being submitted in admissible form. *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005).

"[U]nder the [Federal] Rules [of Evidence], the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 988 (11th Cir. 2016) ("Rule 702 compels district courts to perform a "gatekeeping" role concerning the admissibility of expert testimony."). Rule 702 of the

Federal Rules of Evidence governs the admissibility of expert testimony. It provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.
>
> In fulfilling their gatekeeping role, courts must consider whether:
>
> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Seamon*, 813 F.3d at 988 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted)).

The first gatekeeping consideration—the expert's qualifications—may be satisfied in several alternate ways, "including by scientific training, education, and experience." *Id.* (citing *United States v. Frazier*, 387 F.3d 1244, 1260–61 (11th Cir. 2004)).

The second gatekeeping consideration—reliability of methodology—requires assessment of

> "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. The district

9

court may consider "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 593–94). This list is not exhaustive; the district court may take other relevant factors into account. In assessing reliability, the court must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

*Seamon*, 813 F.3d at 988.

The third gatekeeping consideration—the helpfulness of the testimony—is an issue of relevance that requires the testimony to have "'a "valid scientific connection to the pertinent inquiry."'" *Id*. at 988-99 (quoting *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009) (quoting in turn *Daubert*, 509 U.S. at 587)).

## V.  ANALYSIS

A.  Wantonness, Negligent Inspection, and AEMLD Claims

Plaintiff concedes that he does not have sufficient evidence to sustain his wantonness, negligent inspection, or AEMLD claims. Accordingly, those claims are due to be dismissed.

B.  Negligent Installation

Under Alabama law, general negligence principles apply to tort claims for negligent maintenance, inspection, or repair of elevators. *Agee v. Chugach World Servs. Inc.* ("*Agee I*"), No. 5:12-CV-2119-MHH, 2014 WL 5795555, at *7 (N.D. Ala. Sept. 30, 2014) (citing *Shanklin v. New Pilgrim Towers, L.P.*, 58 So. 3d 1251, 1256 (Ala. Civ. App. 2010)). The

parties reasonably proceed on the assumption that the same general negligence principles also apply to Plaintiff's claim for negligent installation[3] of elevators. Thus, to prevail on his negligent installation claim, Plaintiff must prove "'(1) a duty[4] to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.'" *Id*. (quoting *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994)).

Here, Plaintiff has submitted evidence in the form of Koshak's expert testimony that, according to the applicable standard of care, the elevator should have a clearance of 0.25 inches between the clutch assembly and the pickup roller assembly when the elevator doors are closed; otherwise, an impact between the two parts may trigger an emergency stop. Plaintiff has also submitted evidence that the clearance was not sufficient on the first floor, primarily in the form of an expert opinion that, even with the bumper stuck to the cab door, if the clearance on the first floor had been sufficient as it was on the second, the elevator would not have tripped interlock on the first floor and come to an emergency stop. Defendant does not seek to exclude any of this particular expert testimony, which

---

[3] In fact, Defendant does not separately address the negligent installation claim, but conflates it with the negligent maintenance claim. Thus, for that alternate reason as well, summary judgment is due to be denied as to the negligent installation claim.

[4] Citing *Agee I*, Plaintiff argues that the heightened standard of care applicable to common carriers also applies to the maintenance of elevators. (Doc. No. 31 at 15.) Though the authorities cited in *Agee I* support that position, the *Agee I* court declined to resolve a dispute between the parties as to whether the heightened standard of care applied, or whether the parties' maintenance contract instead established the standard of care. To rule on the pending motions, the Court need not determine if the heightened standard of care applies to negligent maintenance or negligent installation claims, so, alike the court in *Agee I*, the Court will not resolve the issue at this time.

establishes that Defendant breached the standard of care by not installing[5] the elevator with the appropriate clearance and that the breach of the standard of care foreseeably caused the emergency stop. It is undisputed that the emergency stop, in turn, proximately caused Plaintiff's injuries.

Thus, even though Defendant points to evidence that contradicts the opinion of Plaintiff's expert, a genuine issue of material fact precludes summary judgment on Plaintiff's negligent installation claim. *See Spencer v. Otis Elevator Co.*, No. CV 114-132, 2016 WL 5419438, at *4 (S.D. Ga. Sept. 27, 2016) ("Even a single expert opinion might suffice to create a triable issue of fact."). *Cf. Jones v. Otis Elevator Co.*, 861 F.2d 655, 664 (11th Cir. 1988) (holding the trial court properly denied postjudgment motions over the defendant's argument "that the plaintiff presented no evidence [the defendant] maintained the elevator negligently" because the evidence of the defendant's negligence was "certainly conflicting," thus implicating the jury's traditional role "to weigh conflicting evidence," including the testimony of the plaintiff's expert regarding negligent maintenance and the plaintiff's testimony that the elevator mishap caused his injuries).

---

[5] Defendant does not argue that the clearance could have been correct at the time of installation even if it was not correct at the time of the accident. Neither does Defendant develop any argument that Plaintiff failed to show that the clearance was improper at the time of installation. As the parties (and particularly the Defendant, who filed the motion for summary judgment) make no substantial argument on these points, the Court will not address it in this Memorandum Opinion and Order.

C.  Negligent Maintenance

Again, to establish negligent maintenance of the elevator, Plaintiff must prove "'(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.'" *Agee I*, at *7 (quoting *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994)). That is, "[Plaintiff] must present "substantial evidence that, taking into account all of the attendant circumstances, [Defendant] did something or failed to do something that would violate the proper standard of care one must observe in [maintaining] an elevator . . . and that [Defendant's] action or inaction proximately caused [Plaintiff's] injuries." *Id*. (internal citations and quotation marks omitted).

Here, Koshak found that Defendant failed to properly maintain the elevator by verifying the pick-up roller alignment and correcting the problem. Koshak concluded:

> 45. On the basis of the items reviewed, using the aforementioned facts, and my experience, education, and training in the elevator industry, I have reached the following opinions and conclusions with a reasonable degree of engineering certainty.
>
> 46. The elevator had little maintenance and the improper alignment of the first floor pick-up roller assembly caused clipping of the interlock, causing the sudden stop, making the elevator unsafe and directly causing injury to Mr. Miller on board.
>
> 47. Because the usual and customary practice of verifying the pick-up roller alignment at more frequent intervals and correcting the problems was not followed, the malfunction was allowed to persist and ultimately caused the elevator to suddenly stop and injure Mr. Miller.

(Doc. No. 28-1 at 16.)

Elsewhere, in a rebuttal report, Koshak again noted that, based on his review of the records, it appeared that running clearance dimensions had not been properly maintained.

13

(Doc. 28-3 at 2, ¶¶ 2-5; *id*. at 9-10, ¶¶ 18, 19, 20 ("Running clearance dimensions are not included in the checklist [in ASME A17.2]. Verifying running clearance is solely the duty of TKE, the maintenance company, to assure these are properly maintained. Being inspected is not an indicator of being "properly maintained.""); *id*. at 11, ¶ 19 ("The elevator had little maintenance and the improper alignment of the first floor pick-up roller assembly caused clipping of the interlock, causing the sudden stop, making the elevator unsafe and directly causing injury to Mr. Miller onboard."); *id*. at 11, ¶ 20 ("Because the usual and customary practice of verifying the pick-up roller alignment at more frequent intervals and correcting the problems was not followed, the malfunction was allowed to persist and ultimately caused the elevator to suddenly stop and injure Mr. Miller.").)

Thus, Plaintiff has presented evidence in the form of an expert opinion that Defendant breached the duty to properly maintain the proper clearance and that the breach of that duty proximately caused the improper alignment and the clipping of the first-floor interlock (and the emergency stop that caused Plaintiff's injuries) when the rubber bumper was stuck to the cab door.

Defendant cites *Wyatt v. Otis Elevator Co*., 921 F.2d 1224, 1227 (11th Cir. 1991) for the proposition that "[a] company under contract to maintain an elevator in good repair may be liable to persons injured by a condition in the elevator that needs repair when the company has notice or knowledge that should have alerted it to the need for repair." Defendant's citation to *Wyatt* does not win the day on summary judgment. The cited statement in *Wyatt* was addressed to claims involving negligent elevator *repair*. *Cf. Agee v. Chugach World Servs. Inc.* (*Agee II*), No. 5:12-CV-2119-MHH, 2014 WL 5795559, at

14

*1 (N.D. Ala. Nov. 6, 2014) (noting that the defendant "repeatedly lumped maintenance and repair together" in its argument). Here, Plaintiff is not making a claim that Defendant should have known about and repaired the problem that caused the bumper to stick to the door. Rather, Plaintiff's claim is that Defendant should have maintained the proper clearance at the first-floor level even in the absence of a defective bumper, which would have averted the emergency stop when the bumper eventually stuck to the door. Plaintiff's expert opined that the standard of care would have been to verify and maintain the proper clearance,[6] and Defendant does not deny it.[7] Thus, Plaintiff has presented substantial evidence Defendant knew or should have known of the need for *maintenance*, *i.e.*, to check and maintain the proper clearance.

In support of its argument that it had to have actual knowledge of the problem with the clearance even in a negligent maintenance case, Defendant cites *Spencer v. Otis*

---

[6] (*See*, *e.g.*, Doc. No. 28-3 at 9 (Koshak's opinion that "[m]aintenance includes verifying running clearances which is notice that a reduced running clearance can be hazardous if a bumper were stuck to the car door it would cause an emergency stop. The sticking bumper simply revealed the improper adjustment and negligent maintenance.").)

[7] In its summary judgment brief, Defendant cites Davis's deposition testimony about an elevator maintenance manual for the proposition that doors, hoistway entrances, and door equipment, "and the proper clearance between them, are usually and customarily inspected as part of preventative maintenance visits." (Doc. No. 22 at 5.) Defendant's argument is consistent with the opinion of Plaintiff's expert that the clearances *should* be checked during regular maintenance. Further, in the cited deposition testimony, Davis did not testify that the *clearances* in particular *were* checked during maintenance. He did not specifically mention checking and maintaining clearances at all in the cited testimony. The inference that checking and maintaining the hoistway and car doors and interlocks would have implicitly involved checking clearances is only one of several reasonable competing inferences that may be taken from Davis's testimony; such an inference is, therefore, not to be drawn to Plaintiff's detriment on summary judgment.

*Elevator Co.*, No. CV 114-132, 2016 WL 5419438, at *4 (S.D. Ga. Sept. 27, 2016).[8] Defendant's citation to *Spencer*, however, is not sufficient to win summary judgment. In *Spencer*, the court granted summary judgment because the Plaintiff did not have evidence to "prove that Defendants did something wrong – in this case, evidence that Defendants *failed to properly maintain the elevator or* failed to fix a problem they knew *or should have* known about." *Spencer*, 2016 WL 5419438, at *4 (emphasis added); *see also id.* at *5 (granting summary judgment on grounds that the plaintiff "failed to offer any affirmative evidence that [the defendant] was negligent in its maintenance and repair *or* that it knew or should have known of a defect with the elevator" (emphasis added)). Here, however, as previously explained, Koshak opined as to negligent maintenance and also that, had Defendant properly performed the maintenance, Defendant would have addressed the improper clearance before the accident occurred.

Accordingly, summary judgment is due to be denied on Plaintiff's negligent maintenance claim. *Cf. Smith v. Otis Elevator Co.*, No. 1:05-CV-2330-TCB, 2007 WL 9701321, at *6 (N.D. Ga. Dec. 4, 2007) (holding, as to a negligent elevator maintenance case brought under Georgia law, that actual knowledge of a defect was not required "if [the plaintiff] has presented evidence that [the d]efendants could have learned of the defect in elevator #4A during an inspection, or that [the d]efendants did not follow a reasonable inspection procedure" and that, because the plaintiff did produce such evidence, "summary judgment is not appropriate and this case should proceed to a jury").

---

[8] *Spencer* involved a negligent elevator maintenance claim under Georgia law.

D.     Motion to Exclude Expert Testimony

Defendant moves to exclude Koshak's expert opinion only as to two issues. First, Defendant contends that Koshak lacked sufficient factual support for his criticisms of Barry's and Davis's conclusions. However, the denial of summary judgment as to the negligent installation and maintenance claims is not premised on Koshak's criticism of the conclusions of Defendant's experts, but on Koshak's own opinions and conclusions. Hence, it is not necessary at this time to resolve the motion to exclude Koshak's criticisms the conclusions of Defendant's experts. Moreover, most of Defendant's objections to Koshak's criticisms go to the relative weight of Koshak's opinions, not the admissibility. *Finley v. Otis Elevator Co.*, No. CV 21-0101-WS-MU, 2022 WL 17811961, at *2 (S.D. Ala. Dec. 19, 2022), *appeal dismissed*, No. 23-10188-JJ, 2023 WL 2977990 (11th Cir. Mar. 16, 2023) ("It is . . . error to conflate admissibility with credibility, as by considering the relative weight of competing experts and their opinions."); *see Chery v. C.R. Bard, Inc.*, No. 17-60637-CIV, 2017 WL 7726741, at *2 (S.D. Fla. Apr. 18, 2017) (denying *Daubert* motions without prejudice to raise them at trial on grounds that "the majority of the parties' *Daubert* arguments go to the weight of the evidence and not the admissibility").

Second, Defendant moves to exclude Koshak's calculation of the thickness of the rubber bumper by counting computer pixels in a digital photograph of the bumper. *Finley*, 2022 WL 17811961, at *2 ("Expert testimony 'must be "scientific," meaning grounded in the methods and procedures of science, and must constitute "knowledge," meaning more than subjective belief or unsupported assumptions.'" (quoting *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004))). Defendant argues that Koshak lacks the necessary

17

expert qualifications to use the pixel-counting calculation method and that Koshak provided no evidence that his calculation method was reliable. The denial of summary judgment as to the negligent installation and maintenance claims does not rest on Koshak's determination in a rebuttal report that the rubber bumper measured 0.166 inches. Therefore, it is not necessary at this time to resolve the motion to exclude Koshak's calculation.

Because it is not necessary to resolve the motion to exclude Koshak's expert opinion before ruling on the motion for summary judgment, the motion to exclude is denied without prejudice to raise the arguments therein in a motion *in limine* or at trial, or to vigorously cross-examine Koshak and present evidence contrary to his opinions.

## VI.   CONCLUSION

For the reasons stated herein, a separate Order (Doc. No. 42) has been entered as follows:

1. Defendant's Motion for Summary Judgment (Doc. No. 22) is DENIED IN PART as to Plaintiff's claims of negligent elevator installation and negligent elevator maintenance.

2. Defendant's Motion for Summary Judgment (Doc. No. 22) is GRANTED IN PART as to Plaintiff's claims of wanton elevator installation, wanton elevator maintenance, negligent and wanton elevator inspection, and Alabama Extended Manufacturer's Liability Doctrine.

3. Defendant's Motion to Exclude John Koshak's Expert Report and Opinions (Doc. No. 23) is DENIED without prejudice.

DONE this 11th day of October, 2023.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE